May it please the Court, my name is Paul Banker and I represent Sunrich Food Groups on this appeal. In order to understand this appeal, I think it's important to go back to the posture of the last appeal that appeared before this Court, which resulted in an opinion in October of 2006. This case arose out of a business deal that went wrong. It resulted in a jury trial in June of 2004. And in that trial, Sunrich made a number of claims against Pacific, most of which it prevailed upon. Pacific then appealed from the judgment and post-trial motions in that case to take the case up to the Ninth Circuit. While that was going on, Sunrich continued to litigate its entitlement to attorney's fees in the District Court. And when that had reached its final conclusion by November of 2005, Sunrich was unsatisfied with the amount that had been awarded. It had begun by asking for $1.2 million in attorney's fees for an Oregon trade secret misappropriation claim. And the District Court in March of 2005 had issued an order saying that it was going to exercise its discretion to award fees for the misappropriation of trade secrets, but it was unsatisfied with the $1.2 million request and the degree of specificity. So Sunrich went back and converted the $1.2 million request into an $862,000 request. And the District Court then took that request, analyzed it, and exercised its discretion to reach a number of $175,000. Sunrich was unhappy with that, and so Sunrich appealed to the Ninth Circuit. And Sunrich's appeal and Pacific's appeal were consolidated, which resulted in the October 2006 opinion in this case. But in that opinion, the only question on appeal as to attorney's fees was the amount of attorney's fees. Pacific did not cross appeal on the question of whether or not there was an entitlement to attorney's fees. And what this Court said in its October 2006 opinion was it was unable to determine how much of the change from the $862,000 that Sunrich had requested, which resulted in the $175,000 award, how much of that was due to an appropriation under Oregon law, and how much of that was due to the sustaining of objections. Then, when the case comes back on remand, the District Court said, well, looking at the October 2006 opinion from the Ninth Circuit, in which the Ninth Circuit had ruled that there was no trade secret for the misappropriation of the half-gallon product opportunity, the District Court said, well, that was the only claim for which I awarded the $175,000. So in clarifying and in recalculating, my award of attorney's fees in this case is zero. Now, that is the one thing that couldn't have happened on remand in this case. The only question on remand coming back from this Court after the October 2006 opinion was that the scope was between $862,000 that Sunrich had requested for attorney's fees for misappropriation under the Oregon Trade Secrets Act, or the $175,000 that the District Court had awarded. It was not to recalculate or to revisit the question of whether or not there was an entitlement to fees in the first place. And so, well, it is somewhat unusual to, you know, go back on remand and find out that after the Ninth Circuit has taken out one of the claims and the District Court says, well, in my mind, that was the claim for which I awarded attorney's fees, you have the unusual circumstance, because of the appellate posture and the issues that were taken up on appeal in the first appeal, that the explanation of the District Court should have been, I awarded $175,000 because of the $175,000, because of the claim that's no longer in the case, but that is foregone to me. I have no longer the ability to go back and revisit the question of whether or not there's attorney's fees. So there should have been a calculation, an explanation of the apportionment issue under Oregon law, and there should have been a ruling on each of the objections as to the billing entries. But there was not an ability to flat out say, after the fact, you know, that this was related to a claim that is no longer here, and so, therefore, the answer is zero. And also, does the law of the case apply here? Well, I think there's two doctrines that get us to the same place. One is the Mandate Doctrine, and one is the Law of the Case Doctrine. But, you know, both of those are supported by the idea of finality. Think about it this way. If Pacific had appealed from the judgment following the jury trial and gone up, and Sunrich had not made its own appeal on the attorney's fees award, and the Ninth Circuit had concluded that the half-gallon product opportunity was no longer in the case, and so when the Ninth Circuit remanded from Pacific's appeal, it was really to do an adjustment of the prejudgment interest award, because that claim was no longer in the case. The damages that the jury had awarded for that part of it were no longer in the case. And so if Sunrich had not challenged the reduction from $862,000 down to $175,000, there would have been no vehicle, no opportunity, no forum, no platform to, you know, to reach that question of $175,000 becoming zero. What proportion of the damages had been awarded for the half-gallon issue, and what proportion for the mispricing? After the jury trial, there was an award of $2.5 million. Of that, there was a $798,000 award for misappropriation of the pricing info and a $96,000 award for misappropriation of the half-gallon opportunity. The only piece that the Ninth Circuit removed in its October 2006 opinion was the $96,000 half-gallon opportunity. Now, you know, on remand, we find out from the district court that the rationale behind the award of attorney's fees at $175,000 level was only related to the half-gallon opportunity. That distinction is really one that was never articulated. It was always a question of, attorney's fees are awarded for misappropriation of trade secrets under the Oregon Trade Secret Act. There were other claims in the case, breach of contract claims. There were, you know, a variety of things were litigated and awarded as damages. And, you know, going up on appeal the first time, the question was, was there an error in the application of law in awarding $175,000 in attorney's fees for the trade secrets claim, or should there have been an apportionment between fee claims and non-fee claims, or did one of the exceptions apply where you could say that the claimant would have a... So I guess what I'm trying to understand, part of your argument is that the bulk of the damages that arose from a fee-generating claim remained intact after the appeal. Yes, that's correct. The majority of the misappropriation claim damages were still in the case following the first appeal. And is it your... you didn't say anything about this that I recall in the briefing, but is it your view that the case should be reassigned to a different judge if we were to agree with your argument or not? I don't know that it needs to be assigned to a different judge, because, I mean, that was the presiding judge at trial. I think that the district court judge exceeded the scope of what this court was asking for. And, I mean, it is somewhat difficult to get your mind around when you say, well, I mean, if, in fact, the district court judge was thinking, I'm awarding fees only for the half-gallon opportunity, the $96,000, for which I'm awarding $175,000 in attorney's fees, and now I don't want to do that because the Ninth Circuit hasn't upheld that claim, and so I would never have awarded that if I would have known it in the first place. The problem is that issue wasn't preserved on the first appeal. I mean, Pacific did not appeal as to the entitlement to attorney's fees. And when Sunridge appealed as to the amount, Pacific didn't cross-appeal. So it was in opposing that appeal, in opposing Sunridge's appeal on attorney's fees, he was basically arguing for the status quo of not more than $175,000. Sunridge was asking for more, and Pacific was asking to maintain the status quo. If I could, I'd like to reserve the rest of my time. You certainly may, counsel. We'll hear from the other side. Good morning. If it may please the Court, my name is Brian Coluccio. I represent Pacific Foods of Oregon. I would submit to the panel that the District Court did abide by the Ninth Circuit's mandate in its decision not to award attorney's fees on remand, and let me explain why. I tried to think of an explanation as to the process of how fees were awarded in this case, and I think the important point to keep in mind at the outset is that there was never any entitlement to fees on the part of Sunridge at any point in this case. There was not a contract clause that provided for prevailing party fees, nor was there a statute that indicated that upon prevailing,  The award of fees in this instance was entirely discretionary, and there was a three-step process to get to that point. The first step is that there needed to be a basis, not an entitlement, but a basis for the award of fees. The basis afforded in this case was the jury's verdict converted into a judgment that there was a violation of the Oregon Trade Secrets Act on two parts. First, the jury determined that there was a violation on the half-gallon claim that was asserted by Sunridge, and second, the jury determined that there was a violation for the use of the court pricing information. Counsel, I want to read to you a passage from the Court of Appeals decision in October, and it's on ER 23, which is page 12 of the disposition. The district court apparently believed it could only award fees pertaining exclusively to the OTSA claim, which is incorrect under Oregon law. We therefore must remand for a new determination of attorneys' fees, applying the correct legal standard. Isn't that pretty much a command, that attorney fees are indeed appropriate, but it was up to the district judge on remand to calculate? Well, I agree that the remand specified that there be a quantification, but not to criticize the Ninth Circuit's opinion, because I think there's some criticism that could be made for the district judge's March 2005 decision in terms of not clarifying the basis for the award of fees. Under the Trade Secrets Act, there has to be not only a violation of the Act, but there has to be demonstration of willfulness in this case. Well, that sounds like you're relitigating the merits of the case. This is an attorney's fee issue. Well, I agree it is. But under the statute, it's first discretionary for award of fees. Second, the award of fees under the Trade Secrets Act being entirely discretionary is to take into consideration the law applicable to patent infringement claims. And I would refer to 35 U.S.C. Section 285 in the authority that's cited in our brief for this proposition. I think it's important to look at that law, because what it says is that in patent infringement cases, part of a court's determination in exercising discretion in awarding fees is to take into account also whether there's been an award of punitive damages. Counsel, I'm sorry to interrupt you, but I need to go back here and sort of, for me, the big picture starts with the court's original award of fees, in which the court said that it would exercise its discretion in award punitive fees on the Oregon Trade Secrets Act claim. And there is no suggestion that it's only part of the claim. The Oregon Trade Secrets Act claim encompassed parts, but it appears that the court was awarding fees in its discretion to begin with. Then the case came up here, and this court had no occasion to disturb the court's exercise of discretion. It upheld implicitly by saying, well, we don't understand how you got to the number you got to, so please explain yourself. But isn't that implicitly a holding that upholds the original award, which stated the court will exercise its discretion to award plaintiff attorney fees? Well, respectfully, I say no. And the reason why is to look again at the underlying record at the district court level, that there wasn't a trade secrets claim. If we look at the jury verdict form at ER 36 and 37, specifically the jury was asked to examine two different trade secrets claims. There was a question asked, was their status of the half-gallon information to qualify as a trade secret? The jury was asked yes or no. There was a separate question asked, did the court pricing information qualify as a trade secret, yes or no? That's true, but the bulk of the damages arose from the claim that remained intact. And one could also argue that the punitive damages awarded reflect the court pricing information, misappropriation as well. And that's why, again, I revert the court back to the discretionary process that the court would go through that's unique to trade secrets claims, again, using the patent infringement claims as guidance, because part of the analysis in the trial court or district court's exercise of discretion is also to examine what amount of punitive damages were awarded. Counsel, did the district court offer any explanation as to why in an exercise of discretion that he would award damages on the half-gallon issue but not on the pricing information issue? He didn't offer any. It seems so counterintuitive given the disparity in the actual award. But what intellectual justification is there for drawing that distinction? The only intellectual explanation is found in Judge Haggerty's May 2007. Okay. And what did he say? What he said is that he believed that as far as the half-gallon claim was established and proven at trial based on the evidence that he heard and based on the jury's verdict, that he felt that that was a claim significant enough based on willfulness of misappropriation to have awarded fees. He went on in his opinion and explained that from his perspective that the court pricing claim was such that the question of willfulness or intent, although that was a finding by the jury, from his perspective in terms of awarding attorney's fees on a discretionary basis, that that wasn't good enough, primarily because of the nature of how Pacific Foods came about, the information, the fact that Pacific Foods had involvement. Is that an abusive discretion for a judge to say, I believe this part of the jury's verdict, but I don't believe that part of the jury's verdict, so I'll award damages here, but I'm going to uphold both verdicts? I don't think it's a question of believing the jury's verdict, because a jury can come down with a willfulness finding in a trade secrets case, and a district judge or a trial court, even with that determination by the jury, is not obligated to award fees. Right. But now we've got a judge who's saying, I can't overturn either one of these verdicts, but I really believe only one of them, and so I'll award fees on that one and not as to the other. Well, I don't. Because that's almost an abusive discretion, isn't it? Well, I would disagree that that's what Judge Hegarty said in his May 2007 order. He didn't. That's why I asked you if there was any explanation as to why he distinguished between one claim and the other. He offered an explanation distinction in terms of the nature of the access to the information as I read his decision, which was different from the access to the information regarding the half-gallon claim. Now, whether that distinction was appropriate, whether that served as an adequate basis for him to decide in awarding fees only on the half-gallon claim, I guess that's a question of whether that would be an abusive discretion. But he did offer an explanation. It is contained in one very terse paragraph, which basically says, I'm paraphrasing, but it basically says the Ninth Circuit disagreed that the trade secret claim pertaining to the half-gallon opportunities was properly established, and previously I have grounded my decision on the perceived merit of that aspect of the claim. But I think that's why Judge Bybee asked the question he asked. Isn't that sort of a reassessment of the jury's verdict by saying, well, I found that there was merit, I perceived merit only in that aspect of the claim because it was the smallest part of the claim? If I can just step away, because there's another part I actually don't know about. I'm going to read this piece a bit more to that point. I'm looking at ER-7 towards the bottom of the page. And, Counsel, if Sunridge thought that this was an abusive discretion, shouldn't they have brought that in the first appeal? And how could they have possibly known that that's what the district court was deciding? Counsel, if you don't mind, would you speak into the microphone for the recording? I would say no. And the reason, again, is this. There are three steps in the award of fees in this case. First was establishing a trade secrets claim where the jury finds willfulness and misappropriation. That serves as a basis for an award. Even upon that finding, there's not an obligation or a requirement on the part. Right. But my question is, if Sunridge had known at the time of the first appeal that Judge Hagerty said, whatever it is between $175,000 and $800,000, I'm only going to award it to you on the half gallon. Now, if Sunridge had known that, they might have said, whoa, let's not only protest the amount of the fees awarded here, but let's protest the basis as well. But how could Sunridge possibly have known that at the time of the first appeal on attorney's fees? Exactly. In the same position with Pacific Foods, how could Pacific Foods know that the basis for the fee award was on the court claim only, if that was the basis rather than the half gallon? Well, because the court's opinion referred to the trade secret claims as a group. I mean, that's what the first holding was. That's why I asked you the question earlier. When the court said, I'm exercising my discretion under the statute on the claims that are made under that statute, there's no parsing between them. Although I don't mean to split hairs, but if we look at both the March 2005 order and the November 2005 order, it's a claim, a trade secret claim. There's one part of the order in March of 2005, I believe. It's cited in Sunridge's brief where the plural claims is referenced. And, again, I'm not in Judge Hagerty's mind. I don't know what he was thinking in terms of his discretion up until issuance of his May 2007 order. All right. Thank you, counsel. Your time has expired. Thank you. Mr. Banker, you have some reserve time. You know, I think that's exactly right, is that Sunridge couldn't have known that the fees were awarded just on the half gallon product opportunity. And if it would have known that, it would have appealed that in the first appeal. Could you have brought that in this appeal? Could you have claimed it was an abuse of discretion to award it on the one and not on the other? Well, I think that was an issue that was closed off at the time of the first appeal. Right, but could you have brought that in this appeal? In other words, in addition to arguing the question of mandate and law of the case, could you have said, you know, argument number three, if that's what the district court was doing, it was an abuse of discretion? I don't think so. I mean, you know, in the big picture, we came up on the first appeal to argue the amount as between $862,000 and $175,000. When we went back the first time, it ended up being zero. If we are successful in this appeal and we go back, and I don't want to predict too far into the future, but I could see a situation where, you know, not more than $175,000 is awarded, and there is a need for then a third appeal, which is to, you know, to challenge the apportionment under Oregon law after it's re-explained by the district court judge, as well as the rulings on the objections. So, you know, I don't think that the question of the calculation is before the court in this appeal, nor could it have been, because the district court— We may have to see this case one more time. Yeah, it's quite possible. Okay. What I'd ask is that this court remand the case to the district court for the calculation they had asked for the first time. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee